Cite as 2022 Ark. 203

# SUPREME COURT OF ARKANSAS
**No.** CR–22–279

| | | |
|---|---|---|
| MARKUS GENTRY | | **Opinion Delivered:** November 17, 2022 |
| | APPELLANT | |
| V. | | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT [NO. 16JCR–19–54] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE CINDY THYER, JUDGE |
| | | <u>AFFIRMED</u>. |

## RHONDA K. WOOD, Associate Justice

This appeal follows the circuit court's denial of multiple claims of ineffective assistance of counsel made by Markus Gentry, who was convicted of second-degree murder and sentenced to life in prison. Gentry filed the petition under Arkansas Rule of Criminal Procedure 37. The circuit court denied the petition by a detailed written order but did not hold a hearing. Gentry now argues the circuit court erred on seven separate claims of ineffective assistance. We affirm on all points.

### I. *Factual Background*

Markus Gentry received a life sentence after he was convicted of second-degree murder. We affirmed the conviction on direct appeal. *Gentry v. State*, 2021 Ark. 26. The factual circumstances involved Gentry going to a barbershop in Jonesboro where Lewis Gamble worked. A gunfight ensued. Both men were shot, and Gamble died from his wounds.

Gentry argued on direct appeal that insufficient evidence supported the conviction because the killing was justified by self-defense. We rejected that argument by recounting the following evidence:

> Before he died, Gamble told Sergeant Chester that Mark G. [i.e., Gentry] shot him and that they had not been fighting before he was shot. [Two witnesses] both testified that they had not heard anyone arguing before they heard the gunshots. The medical examiner testified that the autopsy did not show that Gamble sustained injuries consistent with a fight. Also, Gentry did not call for assistance after the shooting but fled from the barbershop. We have held that flight is probative evidence of guilt.
>
> The jury heard Gentry's version of events. The jury heard Gentry say that Gamble shot him in the back of the leg when he got up to leave the shop. The jury heard Gentry say that Gamble continued shooting as Gentry tried to wrestle Gamble's gun away from him.

*Gentry*, 2021 Ark. 26, at 6 (internal citations omitted). The State also introduced evidence about Gentry's membership in a gang. The State's theory was that Gentry, active at the time in the Piru gang, shot Gamble out of revenge because he had disrespected Jackie Jones. *Id.* at 9. It had been established at trial that Gamble owed money to Jones, Gentry's maternal figure. After the jury returned its guilty verdict, the trial proceeded to a separate sentencing hearing. Gentry had been previously convicted of four crimes involving violence: two counts of terroristic acts and two counts of first-degree battery. The jury could therefore sentence Gamble as a habitual offender to a prison term of between forty years and eighty years, or life. The jury imposed a life sentence.

After our mandate issued, Gentry filed a Rule 37 petition alleging several instances of ineffective assistance of counsel. Gentry later filed an amended petition. The circuit court dismissed the amended petition with prejudice by issuing a detailed written order. On

2

appeal, Gentry argues the circuit court erred on seven distinct allegations of ineffective assistance of counsel.

## II. *Law and Analysis*

Under the two-prong standard from *Strickland v. Washington*, 466 U.S. 668 (1984), the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *See Holland v. State*, 2022 Ark. 138, at 2, 645 S.W.3d 318, 321. For the first prong, the petitioner must show that counsel made errors so serious that counsel deprived the petitioner of the counsel guaranteed by the Sixth Amendment. *Sandrelli v. State*, 2017 Ark. 156, at 5, 517 S.W.3d 417, 420. We presume counsel was effective, and petitioner must highlight specific acts or omissions that did not result from reasonable professional judgment. *Coakley v. State*, 2021 Ark. 207, at 2, 633 S.W.3d 328, 330.

For the second prong, petitioner must show the deficient performance resulted in prejudice so pronounced that it deprived the petitioner of a fair trial whose outcome cannot be relied on as just. *Williams v. State*, 2016 Ark. 459, at 3, 504 S.W.3d 603, 605. Petitioner must show a reasonable probability that the jury's decision would have been different but for the deficient performance. *Id*. Both deficient performance and prejudice must be shown before a court can grant relief. *See id*. "There is no reason for a court deciding an ineffective-assistance claim to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 3, 504 S.W.3d at 605–06.

When the files and records of the case conclusively show that the petitioner is entitled to no relief, the circuit court need not hold an evidentiary hearing. Ark. R. Crim. P. 37.3;

3

*Lacy v. State*, 2013 Ark. 34, at 4, 425 S.W.3d 746, 748. Conclusory allegations unsupported by facts do not provide a basis for either an evidentiary hearing or postconviction relief. *Barber v. State*, 2016 Ark. 54, at 9, 482 S.W.3d 314, 322. We will not reverse unless the circuit court's findings were clearly erroneous. *Holland*, 2022 Ark. 138, at 2, 645 S.W.3d at 321.

### A. Extreme-Emotional-Disturbance Jury Instruction

At trial, the jury was instructed on first-degree murder, second-degree murder, and reckless manslaughter. They convicted Gentry on second-degree murder. Gentry claimed his trial counsel was ineffective for failing to ask for an extreme-emotional-disturbance jury instruction, too. The circuit court rejected this claim because Gentry could show neither deficient performance nor prejudice. The court reasoned that, throughout the trial, Gentry had maintained that he had shot Gamble in self-defense. The court concluded Gentry could not show that submission of the extreme-emotional-disturbance manslaughter instruction would have led to a different outcome.

Gentry argues the circuit erred on the prejudice prong because the jury had convicted him of the lesser-included defense of second-degree murder; this shows that the jury was inclined to convict him of a crime with a less-culpable mental state. Had the jury also been instructed on extreme-emotional-disturbance manslaughter, it would have had "the full panoply of possible resolutions before it."

We affirm because the circuit court did not clearly err when it concluded the lack of an extreme-emotional-disturbance instruction caused no prejudice. As the circuit court noted, Gentry's defense all along was self-defense and "he never claimed emotional

disturbance." Gentry never argued at trial that the shooting was a crime of passion. We have held that a jury should be instructed on extreme-emotional-disturbance manslaughter when the evidence shows that the defendant killed the victim in the moment following sufficient provocation, such as "physical fighting, a threat, or a brandished weapon." *Fincham v. State*, 2013 Ark. 204, at 10–11, 427 S.W.3d 643, 650. The emotional disturbance or "passion" must have been "caused by a provocation apparently sufficient to make the passion irresistible." *Douglas v. State*, 2019 Ark. 57, at 8, 567 S.W.3d 483, 490. The evidence falls short of that here.

Consider the facts presented at trial. This evidence showed that Gentry went to Gamble's barbershop with intent to settle a score. Gentry had been upset that Gamble failed to pay his maternal gang figure, Jackie Jones, for damage Gamble's relatives caused to her car. Various Facebook posts showed Gentry's intent to avenge this act of "disrespect." And most importantly, Gentry armed himself with a gun for the encounter and fled from the scene rather than calling for help. Nor did Gentry's own testimony provide evidence of extreme emotional disturbance.

The jury also had options other than just convicting Gentry of first-degree murder or second-degree murder. For example, the jury could have convicted Gentry of reckless manslaughter, a lesser-included offense. Or the jury could have acquitted Gentry based on his justification defense. As the jury rejected his justification defense and the reckless-manslaughter instruction, an added instruction for extreme-emotional-disturbance manslaughter was unlikely to yield a different jury decision. Thus, we affirm the circuit

court's holding that the existence of the additional jury instruction was not reasonably probable to change the outcome of the trial.[1]

### B. Comments During Closing Argument

In his next claim, Gentry argues that trial counsel should have objected to several alleged misstatements by the prosecutor during closing argument about the justification defense. The prosecutor told the jury that, to acquit on the basis of self-defense, it must have "reasonably believed Lewis Gamble was using, or about to use physical force, and that [Gentry] only used such force as he reasonably believed necessary." Gentry argues this misstated the law because the justification defense instead required the jury to acquit if there was any reasonable doubt on the issue.[2] The prosecutor also stated that the jury could consider the justification defense only after considering guilt on first–degree murder, second–degree murder, and reckless manslaughter. Gentry argues this misstated the law because the jury had to consider justification alongside each murder count.

The circuit court denied relief because, at trial, it provided the jury instructions that accurately stated the law. The jury received AMI Crim. 2d 705 regarding application of the justification defense. The court correctly noted that jurors are presumed to follow the law. *See Gwathney v. State*, 2009 Ark. 544, at 16, 381 S.W.3d 744, 752 ("[J]urors are presumed

---

[1]As we affirm on the prejudice prong, we need not consider whether a hearing would have been necessary because all the arguments on prejudice involved the record produced at Gentry's jury trial.

[2]"If the issue of the existence of a defense is submitted to the jury, the court shall charge that any reasonable doubt on the issue requires that the defendant be acquitted." Ark. Code Ann. § 5-1-111(c)(2) (Repl. 2013).

to comprehend and follow court instructions."). The court concluded Gentry suffered no prejudice.

We affirm this ruling. The circuit court instructed the jury as to the limited weight it should place on closing statements and accurately instructed the jury about the justification defense, telling them that, in asserting the defense, Gentry was "required only to raise a reasonable doubt in your minds." The court also instructed the jury that the duty to inform them about the law rested with the court. *See* AMI Crim. 2d 101. The court explained these instructions went back with the jury while they deliberated. And Gentry's counsel also tried to clarify this issue in his closing, noting that the justification defense "cancels out everything." Taken together, we cannot say the circuit court clearly erred when it concluded Gentry failed to prove he suffered prejudice from counsel's failure to object.

## C. Darius Furlow's Testimony

On the next claim, Gentry argued his trial counsel should have called Darius Furlow as a witness. Gentry claimed Furlow would have testified that Gentry "bore no animosity" toward the victim, Gamble, thus "negating the prosecution's theory that the murder was motivated by revenge." The circuit court concluded Gentry could not show prejudice because Furlow was not a witness to the shooting, which took place inside a barbershop where only Gentry and Gamble were present. The court concluded Furlow would not have even been able testify because of lack of personal knowledge.

Gentry argues that the circuit court's ruling was erroneous because Furlow's testimony would have been admissible. On appeal, Gentry fails to address the court's core

finding of no prejudice but argues about admissibility only. Accordingly, we affirm on this point.

### D. Additional Microscopic Testing

Next, Gentry claimed trial counsel should have requested microscopic examination of gunshot residue from the victim's clothing.[3] This testing—which could have showed that Gamble had been shot from close range—could have strengthened Gentry's justification defense. The circuit court concluded the absence of this microscopic evidence did not prejudice Gentry. The court noted the expert testimony on this point already buttressed Gentry's defense. An expert had testified that the shrapnel hitting Gamble showed that he and Gentry were already "wrestling with the gun." The court also noted that Gentry's petition did not identify clothing available for microscopic testing and highlighted Gentry's failure to plead on this point: "Gentry did not claim in his petition . . . that had there been clothing available for microscopic testing and had that clothing contained evidence of gunshot residue that the jury would have reached a different result."

We affirm this ruling. The circuit court was correct that Gentry identified no clothing available for testing. Nor does Gentry argue on appeal how the microscopic evidence would have been any different from the expert testimony that Gamble suffered an atypical gunshot wound—the very evidence defense counsel used to bolster self-defense. This claim was conclusory and failed our Rule 37 petition-pleading standards. We find no clear error in the circuit court's denial of this claim.

---

[3]Gentry seeks testing as a form of relief, but he has failed to plead this correctly, failed identify the evidence to be tested, and failed to meet other necessary requirements. *See Marshall v. State*, 2017 Ark. 208, at 4, 521 S.W.3d 456, 459.

## E. Evidence About Gun Malfunction

Gentry next argued that counsel should have impeached a police officer who testified at trial that Gamble's pistol malfunctioned. The police officer had testified earlier at the pretrial hearing but never mentioned the malfunction. The circuit court concluded this testimony wasn't impeachment worthy because the officer's "testimony regarding the possible malfunction of the gun at trial was elicited only after further questioning by the prosecuting attorney—questions that were not specifically asked . . . at the pre-trial hearing." The court also found Gentry's allegation of prejudice conclusory.

On appeal, Gentry argues that "it is unclear what the circuit court would have had Gentry do to prove prejudice." But that inquiry doesn't concern us. Our inquiry is whether the circuit court clearly erred when it reached its conclusion. Gentry has not formulated a responsive argument on this point, so we affirm. *See Ward v. State*, 350 Ark. 69, 74, 84 S.W.3d 863, 866 (2002) ("[W]here a party presents no convincing argument nor cites to any convincing legal authority, this court will not reach the merits of that point on appeal.").

## F. Sentencing Exhibits 72 & 73

The next claim involved the admission of exhibits 72 and 73 during sentencing. These were Gentry's prior convictions and related documents that the State used to prove Gentry was a habitual offender. Gentry argued counsel should have objected to their admission because, under the law, the circuit court should have made an independent finding about prior convictions rather than submit the issue to the jury. *See* Ark. Code Ann. § 5-4-501 (Supp. 2021). Gentry claims this prejudiced him because the exhibits included information about multiple nolle prossed charges, a plea statement, and departure reports.

9

The circuit court denied the claim. The court noted that Gentry had admitted the prior convictions during his testimony in the guilt phase of the trial. The court further noted that the jury had been properly instructed. On appeal, Gentry argues that the circuit court misunderstood his claim. The issue wasn't whether Gentry had committed the crimes but whether, by admitting the sentencing documents, the jury used this other information to impose a higher sentence on Gentry. Gentry insists this information being presented to the jury caused him prejudice.

In all, we find no clear error in the circuit court's ruling that Gentry suffered no prejudice from the admission of these documents. The nolle prossed charges show only that Gentry had been charged with crimes, but that those charges, for whatever reason, were not pursued. And, as the circuit court noted below when denying the claim, the jury was instructed to consider only the charges for which Gentry pleaded guilty. The plea statement contained no prejudicial information either; rather, it contained boilerplate language regarding the first-degree-battery charge that the jury already knew about. And the departure report contained only notations that identified mitigating factors helpful to Gentry.

## G. Constitutional Objection to Gang Evidence

Finally, Gentry alleged counsel was ineffective for failing to raise a state and federal constitutional challenge to the admission of gang evidence. Gentry says counsel should have made these additional arguments for exclusion, citing *Dawson v. Delaware*, 503 U.S. 159 (1992). The circuit court rejected this claim because it found *Dawson* and other cited cases weren't controlling.

On appeal, Gentry again fails to squarely address the circuit court's ruling. He makes the conclusory claim that "Gentry was clearly prejudiced." In any event, the circuit court was correct that *Dawson* didn't apply. That case bars admission of a defendant's beliefs and associations "when those beliefs have no bearing on the issue being tried." 503 U.S. at 168. Here, we already affirmed on direct appeal the circuit court's conclusion that gang-related evidence was relevant. We held that this evidence was "relevant to show identity, motive, and intent and to rebut Gentry's justification claim." *Gentry*, 2021 Ark. 26, at 10. Even if Gentry's counsel had raised a constitutional argument, it would have been rejected. Gentry cannot therefore show that counsel was deficient for failing to make that argument. *Greene v. State*, 356 Ark. 59, 73, 146 S.W.3d 871, 882 (2004) ("Counsel cannot be ineffective for failing to make a meritless argument."). Accordingly, we do not find the circuit court's ruling clearly erroneous.

Affirmed.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.